**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| KAYLA N. NAGEL, | ) CASE NO. 3:22-CV-01205-JRK |
| | ) |
| Plaintiff, | ) JUDGE JAMES R. KNEPP, II |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) CARMEN E. HENDERSON |
| | ) |
| Defendant, | ) **REPORT & RECOMMENDATION** |
| | ) |

**I.     Introduction**

Kayla N. Nagel ("Claimant") seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI"), Period of Disability ("POD"), and Disability Insurance Benefits ("DIB"). This matter is before the Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Error and AFFIRM the Commissioner's decision.

**II.    Procedural History**

Claimant filed applications for SSI, POD, and DIB on August 19, 2019, alleging a disability onset date of May 25, 2015. (ECF No. 5, Tr. 15). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 5, Tr. 15). On February 18, 2021, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 5,

1

Tr. 15). The ALJ issued a written decision finding Claimant was not disabled on April 14, 2021. (ECF No. 5, Tr. 12). On May 9, 2022, the ALJ's decision became final when the Appeals Council declined further review. (ECF No. 5, Tr. 1).

Claimant filed a complaint in the U.S. District Court for the Northern District of Ohio to challenge the Commissioner's final decision on July 8, 2022. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 10). Claimant asserts the following assignment of error:

> (1) ALJ Carey incorrectly created and relied on a residual functional capacity (RFC) that produced relevant work while evaluating Ms. Nagel under prong five of the sequential process by failing to account for off task and absences as a result of Ms. Nagel's impairments and further failing to fully consider essential vocational expert testimony.

(ECF No. 9 at 1).

### III. Background

**A. Relevant Hearing Testimony**

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant, in her Adult Disability Report, alleged disability due to a traumatic brain injury from a craniotomy, and a Chiari malformation. However, the claimant reported that she was "currently working." (Exhibit 2E at 2).
>
> The claimant testified that she is 33-years-old, she completed the 12th grade, she is 5'5" tall and weighs 135 pounds, she is divorced, and she lives with her three sons, ages 7, 9 and 16-years-old. The claimant noted that she has a driver's license, she can take care of her own self-care, and she last worked in February 2020, as a bartender at the American Legion. The claimant testified that she is unable to work because she has "a lot of head pain, vertigo, and she is noise sensitive." She also noted that she has carpal tunnel syndrome, and her hips hurt. She noted that she has not seen any doctors since March 2020, because "they do not listen," and it has been hard to make appointments. She noted that she is able to take her children to school, she can walk around her block, and she can

>lift a gallon of milk. She stated that she can shop for groceries, cook, and use the internet. The claimant admitted that she uses marijuana twice a week, and she stated that "someone gives it to her."

(ECF No. 5, Tr. 22). A vocational expert also testified at the administrative hearing. She testified about three "light work" jobs and three "sedentary" jobs and opined that being off task more than fifteen percent of the workday or absent more than six times per year would preclude work in these positions. (ECF No. 5, Tr. 54–56).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms (sic):

>[I]n May 2015, at St. Rita's Hospital, the claimant underwent a right frontal craniotomy due to right frontal brain lesions; Cephalgia. (Exhibits 3F at 34, 6F at 52). The claimant was found to have a brain lesion when a CT scan was obtained, after she had been assaulted. The claimant reported that her husband assaulted her, and she had been having headaches daily since then. (Exhibits 3F at 36, 5F at 50, 6F at 44). At the time of discharge she was neurologically intact. (Exhibit 6F at 61). In July 2015, it was noted that the claimant's recently resected low grade brain tumor appeared to be a ganglioglioma, after biopsy. (Exhibit 3F at 73). She was seen in July 2015, for evaluation and discussion regarding the potential role of radiation therapy in the management of her low grade malignancy. (Exhibit 3F at 77). It was noted that she still had headaches, most likely from the concussion that she had from the assault, but some contribution from the tumor is possible. (Exhibit 1F at 16).
>
>Upon examination in March 2016, the claimant's gait was normal, she had a negative Rhomberg test, her muscle strength was 5/5, and her muscle tone was normal without atrophy in all limbs. (Exhibits 1F at 11, 2F at 14). The claimant was diagnosed with a status-post gross total resection of right frontal ganglioglioma, without evidence of recurrence or residual mass. (Exhibit 2F at 15). However, the claimant still complained of headaches. (Exhibit 2F at 16). In November 2017, an MRI showed no acute abnormality or mass lesion, and the right frontal lobe surgical cavity decreased in sized from 2015. (Exhibit 5F at 126). In August 2016, a CT scan of the claimant's chest was normal. (Exhibit 5F at 36). In February 2018, the claimant underwent a laparoscopic total hysterectomy with bilateral salpingectomy and cystourethroscopy. (Exhibit 5F at 83).

In June 2019, the claimant noted that she was not currently on medication for her headaches. She will occasionally take Tylenol. She was averaging 4-5 migraines a month. (Exhibit 2F at5 9). An EMG study in July 2019 showed evidence consistent with moderate right median neuropathy at the wrist (carpal tunnel syndrome). (Exhibits 2F at 2, 5F at 250). An MRI of the claimant's brain in July 2019, showed no acute infarct or diffusion restriction. There was a rim like hemosiderin staining along the surgical cavity in the right frontal lobe. Otherwise, no intracranial hemorrhage was demonstrated. (Exhibit 3F at 38). In July 2019, it was also noted that the claimant was exhibiting symptoms of a Chari malformation. (Exhibits 2F at 6, 5F at 6). She also admitted to smoking and using marijuana. (Exhibit 6F at 35).

In a consultative psychological examination, conducted in November 2019, Michael Wuebker, Ph.D., noted that the claimant appeared to be a fairly reliable historian as her reporting was mostly in line with background material. She did not seem to exaggerate or minimize her symptoms. She seemed to be operating in the average range of cognition. Her insight and ability to make sound judgments is intact. Her stressors included her health and financial concerns. The claimant was diagnosed with a depressive disorder and an other specified anxiety disorder. She likewise would likely warrant a posttraumatic stress disorder diagnosis. (Exhibit 4F at 7).

In November 2019, it was noted that the claimant was a current everyday smoker. (Exhibit 5F at 78). In December 2019, the claimant went to Grand Lake Neurology for migraine headaches. (Exhibit 5F at 221). It was noted that she was in remission. (Exhibit 5F at 215). The claimant also noted an improvement in her headaches with a low dose of Effexor. (Exhibit 5F at 209).

In February 2020, the claimant had elective surgery for her Chiari malformation. (Exhibits 6F at 32, 7F at 34). The claimant underwent an occipital craniectomy for Chiari decompression with Duropasty autograft fascia (saved local fascial tissue). (Exhibit 7F at 35). After the surgery, she was deemed safe to go home with exercises. (Exhibit 6F at 32). She had been doing self care and ambulating without any assistive device prior to admission. She had been driving. She does some of the housekeeping and takes care of 3 kids, the youngest of whom is 6 years old. (Exhibits 6F at 20, 7F at 20). The claimant planned to return home at discharge, she denied any needs, and she declines home healthcare, stating she does not think she needs it. (Exhibit 7F at 15).

> In a consultative psychological examination, conducted in September 2020, Michael Wuebker, Ph.D., noted that the claimant, overall, appeared to be a fairly reliable historian. She did not seem to exaggerate or minimize her symptoms. On the WAIS-IV, her Full Scale IQ score was 81. This finding is located in the Low Average range of cognition. Outcomes on the WNIS-IV showed the claimant's Auditory Memory, Visual Memory, Visual Working Memory, and Delayed Memory Index scores were found in the Low Average range. Her Immediate Memory Index score was in the upper end of the Borderline range. Though the claimant complained of some cognitive and memory loss related to her brain surgeries, this decompensation would not seem to warrant a neurocognitive disorder diagnosis. Her insight and ability to make sound judgments was marginally intact. Her stressors include her health and financial concerns. The claimant's prognosis as regards her mental and emotional issues, would seem to be stable. (Exhibit 9F at 11).

(ECF No. 5, Tr. 22–23).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has not engaged in substantial gainful activity since May 25, 2015, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: carpal tunnel syndrome of the right wrist; a remote history of craniotomy in May 2015; bilateral suboccipital craniectomy for Chiari Malformation on February 13, 2020; and migraines without aura (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She can never climb ramps and stairs. She can do no overhead reaching. She can frequently handle and finger with her right dominant upper extremity. She can work in environments with no more than moderate light levels. She is to avoid even

5

>moderate exposure to dangerous machinery and unprotected heights.
>
>6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
>10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
>11. The claimant has not been under a disability, as defined in the Social Security Act, from May 25, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 5, Tr. 17–18, 20, 21, 25, 26).

V.     **Legal Standards**

A.  **Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be

affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to SSI or DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### VI. Discussion

Claimant raises one issue on appeal. She argues the RFC fails to account for off-task time or breaks she must regularly take due to her migraines. (ECF No. 9 at 4). Claimant points out that she testified that she experiences migraines "at least three times a week" and that they "require her to stay in a dark house." (ECF No. 9 at 4). She also argues that the ALJ "failed to fully consider essential vocational expert testimony" that Claimant could not be off task more than fifteen percent

7

of the workday or miss work more than six times a year. (ECF No. 9 at 4–5). The Commissioner rejects this claim, arguing that the ALJ is entitled to adopt whatever RFC restrictions they determine are appropriate based on the evidence. (*See* ECF No. 10 at 5). The Commissioner further argues that substantial evidence supports the RFC. (ECF No. 10 at 6).

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* § 416.945(a). Here, the ALJ determined Claimant's RFC as follows:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She can never climb ramps and stairs. She can do no overhead reaching. She can frequently handle and finger with her right dominant upper extremity. She can work in environments with no more than moderate light levels. She is to avoid even moderate exposure to dangerous machinery and unprotected heights.

(ECF No. 5, Tr. 21). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive—even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

As an initial matter, Claimant correctly notes that the ALJ did not adopt restrictions related to breaks or off-task time in the RFC. The only migraine-related restriction the ALJ adopted was that Claimant "can work in environments with no more than moderate light levels." (ECF No. 5, Tr. 21). Nonetheless, the Court agrees with the Commissioner that the ALJ is free to determine an appropriate RFC and may reject various opinions, records, or subjective testimony based on the evidence. *See* §§ 416.945(a)(1), 416.946(c).

Here, the ALJ discussed Claimant's migraines at length in her analysis. She summarized Claimant's neurological history and treatment throughout her decision:

> the claimant underwent a right frontal craniotomy due to right frontal brain lesions; Cephalgia. (Exhibits 3F at 34, 6F at 52). The claimant was found to have a brain lesion when a CT scan was obtained, after she had been assaulted. The claimant reported that her husband assaulted her, and she had been having headaches daily since then. (Exhibits 3F at 36, 5F at 50, 6F at 44). At the time of discharge she was neurologically intact. (Exhibit 6F at 61). In July 2015, it was noted that the claimant's recently resected low grade brain tumor appeared to be a ganglioglioma, after biopsy. (Exhibit 3F at 73). She was seen in July 2015, for evaluation and discussion regarding the potential role of radiation therapy in the management of her low grade malignancy. (Exhibit 3F at 77). It was noted that she still had headaches, most likely from the concussion that she had from the assault, but some contribution from the tumor is possible. (Exhibit 1F at 16).
>
> [. . .]
>
> The claimant was diagnosed with a status-post gross total resection of right frontal ganglioglioma [in March 2016], without evidence of recurrence or residual mass. (Exhibit 2F at 15). However, the claimant still complained of headaches.
>
> [. . .]
>
> An MRI of the claimant's brain in July 2019, showed no acute infarct or diffusion restriction. There was a rim like hemosiderin staining along the surgical cavity in the right frontal lobe. Otherwise, no intracranial hemorrhage was demonstrated. (Exhibit 3F at 38). In July 2019, it was also noted that the claimant was exhibiting symptoms of a Chari malformation.

(ECF No. 5, Tr. 22–23). The ALJ noted Claimant's migraines were improving by December 2019: "the claimant went to Grand Lake Neurology for migraine headaches. (Exhibit 5F at 221). It was noted that she was in remission. (Exhibit 5F at 215). The claimant also noted an improvement in her headaches with a low dose of Effexor." (ECF No. 5, Tr. 23).

9

The ALJ also summarized Claimant's subjective testimony about her migraines and daily activities. She noted that "[t]he claimant testified that she is unable to work because she has 'a lot of head pain, vertigo, and she is noise sensitive.' . . . [But] [i]n June 2019, the claimant noted that she was not currently on medication for her headaches. She will occasionally take Tylenol. She was averaging 4-5 migraines a month." (ECF No. 5, Tr. 22). Although the ALJ did not reference Claimant's allegation that she experienced migraines "at least three times a week," the ALJ is under no obligation to reference every record in her decision. *See Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *Jenkins v. Colvin*, No. 5:15-CV-1165, 2016 WL 825909, at *9 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to consider all of the evidence in the record, [s]he is not required to discuss each item of evidence in her opinion." (citations omitted)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 WL 815625 (N.D. Ohio Mar. 1, 2016). Further, the ALJ is not required to accept Claimant's subjective testimony at face value. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). The ALJ also reviewed Claimant's daily activities, which included working as a bartender, taking care of her children, taking her children to school, shopping for groceries, cooking, and using the internet. (ECF No. 5, Tr. 21).

The ALJ then reviewed the opinions of several experts who recommended various limitations for Claimant. (*See* ECF No. 5, Tr. 24–25). Notably, none of the experts recommended additional limitations related to breaks or off-task time. (ECF No. 5, Tr. 59–84). The ALJ therefore did not ignore any specific migraine recommendations from experts.

Based on the ALJ's thorough review of the objective and subjective record evidence, as well as various experts' opinions, the Court is convinced that substantial evidence supports the ALJ's RFC. The ALJ noted Claimant's gradual improvement with her migraines, as well as limited use of Tylenol and low doses of Effexor to treat the headaches. (*See* ECF No. 5, Tr. 22, 23). Since no expert recommended additional breaks or off-task time in their opinions, the ALJ did not reject any recommended restrictions for migraines. Additionally, simply because an alternative conclusion may be drawn from the record—that the RFC could have included breaks—this does not invalidate a decision supported by substantial evidence. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.").

Finally, Claimant's cursory argument that the ALJ wrongly ignored the vocational expert's testimony misinterprets the law. (ECF No. 9 at 4–5). A vocational expert's testimony relates to past relevant work and alternative jobs in the national economy, not the RFC. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she 'can and cannot do,' there exist a significant number of employment opportunities for her in the regional and national economies. The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination."). Accordingly, the expert's testimony about off-task time has no impact on what RFC the ALJ adopted, and Claimant's reliance on it is inapt. Rather, the ALJ considered whether the limitation was appropriate for Claimant and ultimately determined that it was not necessary. Substantial evidence supports this decision. There is therefore no reason to disturb the ALJ's decision.

**VII.     Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Error and AFFIRM the Commissioner's decision.

Dated: March 28, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).